Klitzke v. Davis, 172 Wis. 425.

---

KLITZKE, Respondent, vs. DAVIS, Appellant.

*September 22—October 19, 1920.*

*Breach of marriage promise: Evidence: Seduction: Testimony of plaintiff: Damages: Elements: Seduction prior to marriage promise: Amount of damages: Punitive damages: Trial: Failure to request instructions: Result probably not different if instruction had been given.*

1. In an action for breach of marriage promise, where plaintiff's testimony was somewhat confused and perhaps conflicting yet emphatic on the subject, the jury was justified in believing her testimony that her seduction took place after a mutual agreement to marry.

2. Failure to instruct that if a marriage promise was in consideration of illicit intercourse it was void was not reversible error where no such defense was pleaded nor such an instruction requested, and where, even if it had been given, it is probable from the evidence that the jury would have found that the seduction took place after the promise of marriage.

3. Since the breach of marriage promise involved plaintiff's seduction, the jury had the right to consider the usual elements of damages in actions of this character, including plaintiff's disappointment in her reasonable expectations of pecuniary advantage from the marriage, the injury to her feelings, and the mortification and mental suffering which followed the breaking of a long engagement, and her dissuasion from association with other men for such period, rendering the possibility of another marriage more remote.

4. An instruction that, if there was sexual intercourse while there was no promise to marry, the plaintiff would not be entitled

to recover therefor, but that if the defendant, by reason of the promise of marriage, was enabled to and did seduce the plaintiff, this seduction might be taken into account in aggravation of damages, was proper.

5. Where plaintiff was seduced by defendant, who without just cause broke his promise of marriage, impairing her social standing and darkening her life, although there was no proof of property owned by defendant, since the amount of damages in such cases is peculiarly within the jury's province a verdict of $5,000 compensatory and $1,500 punitive damages, not reduced by the trial court, is not so large as to indicate passion or prejudice.

APPEAL from a judgment of the circuit court for Sauk county: JAMES O'NEILL, Judge. *Affirmed.*

This was an action brought for breach of promise of marriage. In aggravation of damages it was alleged that by reason of the promise defendant had seduced the plaintiff. The answer denied the contract. On a directed verdict on the ground that the only question for the jury was that of damages, the jury found for the plaintiff in the sum of $5,000 compensatory damages and $1,500 punitory damages.

The proof showed that the plaintiff at the time of the alleged contract was aged twenty-seven years and the defendant twenty-two years. The parties had known each other from childhood and attended the same district school near Reedsburg. Defendant had received a high school education, had attended Carroll College at Waukesha and the State University for a time, and had studied engineering for two years. He began paying attention to plaintiff in the summer of 1915, and while at the University in 1917 and 1918 wrote letters to the plaintiff, and when he visited his home was in the habit of going to see her.

The plaintiff testified that the first offer of marriage was in a letter from defendant about the middle of June, 1916. That later he came to her house and he asked her to marry him and she accepted the offer. She testified that he had proposed sexual intercourse before this and she had refused;

that after the promise of marriage the proposal was renewed and she yielded to his wishes, and that after this the relation was continued whenever there was opportunity— and marriage was talked of right along.  Defendant testified that sexual intercourse began in 1915 and continued whenever there was opportunity.  The defendant went into the army in April, 1918.  It was agreed that their correspondence should be destroyed, but after he entered the service plaintiff kept the letters she received.  These letters were affectionate and clearly showed that there had been a marriage agreement; they expressed regret that they had not been married before; stated that they would have been married but for the war; asked her to wait until his return, begged her to remain true to him, and spoke of the time when they would be united.

About May, 1919, the defendant returned from overseas.  Plaintiff testified that after his return defendant called a few times and asked that the marriage be postponed for a time in order that he might rest, to which she consented.  Defendant then discontinued his visits.  Plaintiff went to see him, when he asked to be released.  He afterward called upon her again.  Plaintiff swore that he said he had been going out with other women, and that when she refused to release him he threatened to shoot her if she made trouble, and that even after this he compelled her to have sexual intercourse.

According to the testimony of the plaintiff, defendant assigned as a reason for wanting the engagement broken that his folks did not want him to marry her, that he had a lot of money coming from home, and if he married her he would get kicked out and he would never dare to show up at home again.  About a week after this statement he married another woman without any further notice to the plaintiff.

Defendant's attorneys moved for a nonsuit, which motion was overruled.  The plaintiff's attorneys moved for a directed verdict.  The court held that the undisputed evi-

dence showed that there had been a contract of marriage and that defendant had broken it, and the only question in the case was the assessment of damages.

For the appellant there was a brief by *Stone & Quimby* of Reedsburg, and oral argument by *James A. Stone.*

For the respondent there was a brief by *Bentley, Bowler & Lamar* of Baraboo, and oral argument by *Frank R. Bentley.*

JONES, J.    In this action the complaint alleged the marriage contract, the plaintiff's willingness to perform it, that she was debauched by reason of the contract, and that the defendant refused to carry out his promise.

The answer denied that the agreement was made, and alleged that at the date of the alleged contract defendant was much younger than she and that by reason of greater age and experience the plaintiff had debauched him.

From the cross-examination of the plaintiff we infer that the defense chiefly relied on was that the promise to marry was in consideration of sexual intercourse and therefore illegal.    This claim and the claim that the damages allowed were excessive are earnestly urged in the brief for appellant.

There is a direct conflict in the testimony of the parties as to the time of the agreement to marry.    The plaintiff testified that it was made some days before July 18, 1916, when, according to her statement, the first sexual intercourse took place.    According to defendant's testimony the sexual relations began in 1915, and no marriage agreement was made until 1918 and while he was in France.

Doubtless all this testimony was considered by the jury, and from their verdict it is fair to assume that they believed the plaintiff's statement to the effect that she had repeatedly been solicited to comply with his desires but had refused until after the mutual agreement to marry had been made and for some days thereafter.    Although dur-

ing the severe cross-examination of plaintiff her testimony was somewhat confused and perhaps even conflicting, she was emphatic in her testimony on this subject. We cannot say that the jury was not justified in believing her.

It is urged by appellant's attorneys that the court erred in holding that the only question for consideration was that of damages. It suffices to say that the defendant admitted that he had made the promise while overseas and that his letters to her clearly prove the promise.

It is argued that the court erred in failing to instruct the jury that if the promise was made in consideration of illicit intercourse it was void. The circuit judge gave no such instruction. He may have considered this unnecessary because no such defense was pleaded or because no such instruction was asked. If he had given elaborate instructions on this point, it is probable from the evidence that the jury would have found that the seduction took place after the promise of marriage. The following statement of this court in *Falkner v. Schultz,* 160 Wis. 594, 150 N. W. 424, where a similar question arose, is quite applicable:

"The answer to this contention is that there is ample evidence that the promise of marriage was not based upon an illegal consideration, viz. illicit intercourse, and that the seduction occurred after the promise of marriage, and that such promise of marriage by defendant was frequently repeated and renewed on different occasions when the plaintiff yielded her person to defendant."

It is argued that the damages allowed are excessive; that the plaintiff was older than defendant by about five years; that there was no proof that the defendant had property. The jury had the right to take into consideration the usual elements of damages in actions of this character. Plaintiff was entitled to compensation for the disappointment in her reasonable expectations of pecuniary advantage from marriage with defendant. They could properly consider the injury to her feelings and the mortification and mental suf-

fering which followed the rude breaking up of the long engagement.

The defendant had dissuaded the plaintiff from association with any other man and begged her to remain true to him. Meanwhile the possibility of any other marriage was becoming more remote. The jury were properly instructed that if there was sexual intercourse while there was no promise to marry the plaintiff would not be entitled to recover therefor; but that if the defendant by reason of the promise of marriage was enabled to and did seduce the plaintiff, this seduction might be taken into account in aggravation of damages.

The jury probably believed that the plaintiff was seduced by the defendant by reason of the promise of marriage, and that he used her for the gratification of his passions when opportunity offered for nearly three years; that then without any just cause he discarded her under such circumstances as impaired her social standing and darkened her life.

There was testimony from which the jury might have believed that her repudiation by him was wanton and ruthless and intended to wound her feelings and injure her prospects in life. They may have believed that the allegation in the answer that defendant was debauched by the plaintiff was made in bad faith and utterly without foundation.

Since there was no proof of property owned by the defendant the verdict was undoubtedly a large one, and we should have been better satisfied if it had not exceeded $5,000. But the facts present a case where a large verdict was justifiable. It is well settled that in this class of cases the amount of damages is a subject peculiarly in the province of the jury. On the motion for a new trial the circuit judge declined to reduce the verdict.

We cannot say that in assessing the damages, compensatory or punitive, the jury were influenced by passion or prejudice, or that the discretion of the circuit judge in denying a new trial was not properly exercised.

*By the Court.*—Judgment affirmed.